UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WILLIAM HENRY HARRISON,

    *Plaintiff*,

  v.

FEDERAL BUREAU OF PRISONS, *et al.*,

    *Defendants.*

Civil Action No. 16-819 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff William Henry Harrison served two separate terms of incarceration in federal prison. In 2008, near the end of his first term, a district court directed the Bureau of Prisons ("BOP") to disregard certain "misleading" statements in Harrison's file, which had prompted the BOP to incorrectly designate Harrison as a sex offender and declare him ineligible for minimum security housing. When Harrison was re-incarcerated in 2016, however, the BOP continued to treat him as a sex offender. Harrison made substantial efforts during his incarceration to pursue administrative remedies, and eventually had his sex offender designation removed approximately two weeks before his release date. But, by then, it was too late for the BOP to transfer him to into minimum security prison, and he has now been released. He brings this lawsuit against the United States, the BOP, and various BOP officials. The Court construes his complaint to seek (1) damages, (2) vacatur of his sex offender designation and his corresponding security and housing classifications, and (3) an order compelling the BOP to allow Harrison to review certain records in his BOP prisoner file. Defendants have moved to dismiss and/or for summary judgment.

For the reasons discussed below, the Court will **DENY** without prejudice Defendants' motion to dismiss Harrison's claim for common law libel with respect to the individual-capacity defendants, on the ground that the Court cannot determine its jurisdiction over those claims until the Attorney General files a certification under the Westfall Act, 28 U.S.C. § 2679(b)(1). The Court will **GRANT** Defendants' motion to dismiss with respect to Harrison's other claims.

## I. BACKGROUND

The following facts are undisputed for purposes of the BOP's motion to dismiss or for summary judgment.

### A. Harrison's First Term of Incarceration (2003–2008)

In 2002, a jury convicted Harrison of certain drug-related crimes. Jury Verdict [Dkt. 141], *United States v. Harrison*, 99-cr-2 (E.D. Tex. June 4, 2002). Pursuant to Federal Rule of Criminal Procedure 32(d), the probation office submitted a Presentence Report. *See* PSR [Dkt. 164], 99-cr-2 (Jan. 21, 2003) (sealed). The district court then sentenced Harrison to 168 months in prison. Judgment [Dkt. 166], 99-cr-2 (E.D. Tex. Jan. 22, 2003). The U.S. Court of Appeals for the Fifth Circuit affirmed the sentence, partially on the ground that *Blakely v. Washington*, 542 U.S. 296 (2004), "does not apply to the . . . Sentencing Guidelines." 108 Fed. App'x 987, 990 (5th Cir. 2004) (per curiam), *reh'g denied*, No. 03-40160 (5th Cir. Dec. 20, 2004). Twenty-three days after the Fifth Circuit denied Harrison's petition for rehearing, however, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), holding that "*Blakely* does apply to the Sentencing Guidelines." *Id.* at 226. Representing himself, Harrison filed a petition for a writ of *certiorari*. *See* U.S. Dkt. No. 04-10259. The Supreme Court granted his petition, vacated the Fifth Circuit's judgment, and remanded the case for further consideration in light of *Booker*. 545 U.S. 1137 (2005) (mem.). The Fifth Circuit, in turn, vacated Harrison's sentence and remanded

to the district court for resentencing, 237 Fed. App'x 911, 913 (5th Cir. 2007) (per curiam), which took place in January 2008.

Harrison had spent the preceding years in federal prison, where he was "disqualified from minimum security custody and camp placement due to an unwarranted [Sex Offender] Public Safety Factor . . . in his records." Dkt. 1 at 4 (Compl. ¶ 9); *accord id.* at 5–6 (Compl. ¶ 17). Under BOP policy, a "Public Safety Factor" ("PSF") is a designation used to reflect "relevant factual information regarding the inmate's . . . criminal history . . . that requires additional security measures." BOP Program Statement P5100.08, *Inmate Security Designation and Custody Classification*, ch. 5 at 7 (Sept. 12, 2006). Of relevance here, a "Sex Offender" PSF typically precludes the inmate from being placed in minimum security housing. *Id.* at 8. When Harrison sought to have his Sex Offender PSF removed, he learned that it had been placed in his record based on information in the probation office's Presentence Report, which only the sentencing court could amend. Dkt. 1 at 4 (Compl. ¶¶ 10–11).

At his January 2008 resentencing hearing, Harrison raised the issue with the district court. *Id.* at 5 (Compl. ¶¶ 13–14). According to publicly available documents,[1] Harrison's Presentence Report stated that he had been convicted of a "bail-jumping/sexual crime." Minute Entry for Resentencing [Dkt. 243 at 2], 99-cr-2 (E.D. Tex. Jan. 29, 2008). The district court agreed that this description was "misleading." *Id.* Harrison, the court explained, had been "only convicted of bail jumping." *Id.* The court, accordingly, "direct[ed] [the] BOP to not use the misleading information against [Harrison] or [to] deny him considerations [to which] he might . . . otherwise be entitled." *Id.*; *accord* Dkt. 1 at 5 (Compl. ¶ 14). In August 2008,

---

[1] Neither the Presentence Report nor the transcript of the resentencing hearing are presently before the Court.

3

however, Harrison was released from prison "without the BOP ever making the necessary changes in his file based on the sentencing judge's corrections and rulings." Dkt. 1 at 5 (Compl. ¶ 15).

## B.  Harrison's Second Term of Incarceration (January 4 to May 2, 2008)

On January 4, 2016, Harrison pleaded guilty to a new crime and was re-incarcerated for a term of four months.  Dkt. 1 at 4–5 (Compl. ¶¶ 8, 16); *see* Amended Judgment [Dkt. 37 at 1, 2], 15-cr-121 (E.D. Va. Dec. 11, 2015).  On January 7, he learned that he still "could not be incarcerated at the [minimum security] camp facility . . . due to the placement of the Sex Offender PSF" in his file.  *Id.* at 5–6 (Compl. ¶ 17).  Harrison then spent much of his four-month prison term seeking administrative redress.

BOP regulations create a sequential, four-step administrative remedy process for inmates. *See* 28 C.F.R. § 542.10 *et seq.*; Dkt. 9 at 8.  *First*, the inmate must raise the issue "informally to staff, and staff shall attempt to informally resolve the issue."  28 C.F.R. § 542.13.  *Second*, within 20 days after the basis for the grievance occurred, the inmate must file "a formal written Administrative Remedy Request" with a designated BOP staff member, using the "BP-9" form. *Id.* § 542.14.  The warden has 20 days to respond, with an available 20-day extension.  *Id.* § 542.18.  *Third*, the inmate has 20 days to appeal the warden's response "to the appropriate Regional Director," who has 30 days to respond, plus a 30-day extension.  *Id.* § 542.15(a); *id.* § 542.18.  *Finally*, the inmate has 30 days to appeal the Regional Director's response "to the General Counsel," who has 40 days to respond plus a 20-day extension.  *Id.* § 542.15(a); *id.* § 542.18.  Each request or appeal is considered filed on the date it is entered into the BOP's computer database.  *See id.* § 542.18.

4

Harrison first made two informal attempts to remove his PSF.  On January 13, he filed an informal request with his case manager, Luchia King, attaching the 2008 resentencing transcript and requesting that the PSF be removed.  Dkt. 1 at 15.  King responded on February 18, stating that, although Harrison had "previously pursued the removal of [his] Sex Offender Public Safety Factor . . . through the Administrative Process," "[a] more thorough review of this issue is required before there is any consideration of removal."  *Id.*  The next day, Harrison filed a second informal request, this time with his unit manager, Jennifer Vukelich.  *Id.* at 17.  On March 2, Vukelich responded that the request was "repetitive," *id.*, but granted Harrison leave to proceed to the next step of the administrative process, *see id.* (noting "BP-9 issued to inmate" on March 2, 2016).

That same day (March 2), Harrison filed a formal request with the Warden, Eric Wilson, to have the PSF removed.  *Id.* at 20.  That request, however, was not entered into the database until March 14.  *See id.* at 27; Dkt. 9-2 at 3 (Kelley Decl. ¶ 4); *id.* at 6.  As a result, Wilson's response became due April 3.  *See* 28 C.F.R. § 542.18; Dkt. 1 at 27.  On March 25, Harrison received notice that Wilson had invoked the 20-day extension, making his response due April 23—just nine days before Harrison was set to be released.  *See* Dkt. 1 at 29.  On March 30, Harrison mailed his request to the Associate Warden, Allia Lewis.  *See id.* at 31.  As of April 4, he had received no responses.  *Id.* at 9 (Compl. ¶ 29).

Separately, Harrison also sought access to his BOP records that would indicate whether he was still designated as a sex offender.  On March 3 (the day after he filed his formal request with Wilson), he mailed a request to the BOP's Central Office and the BOP's Designation and Sentence Computation Center, invoking the Privacy Act, 5 U.S.C. § 552a(d)(1), and requesting "review . . . [of] all files maintained in [BOP] systems containing information" relevant to his

5

PSF factor. *Id.* at 23.  And on March 22, he filed a written, formal request for copies of "every 337, 338, and 409" form in his BOP file (i.e., the forms that would indicate his PSFs).  *Id*. at 25.  Neither request received a response.[2]  Dkt. 1 at 7 (Compl. ¶ 21).

In April, apparently under the impression that he was required to exhaust his remedies before leaving prison—and recognizing the reality that he would not have time to do so—Harrison filed suit in this Court.  *See* Dkt. 1 at 9 (Compl. ¶ 30).  Harrison originally mailed his complaint on April 4, *id.* at 2, but the Clerk's Office returned it due to procedural defects, *id.* at 1.  He mailed it again on April 14.  *Id.* at 2.  On April 15—the day after Harrison mailed his now-operative complaint to the Clerk's Office—Wilson responded to Harrison's administrative request.  *See* Dkt. 9-3 at 2.  Wilson explained that Harrison did, in fact, have a Sex Offender PSF in his file and that the district court's January 31, 2008, Statement of Reasons had, in fact, directed the BOP not to use the sex offense information in the Presentence Report.  *Id.*  "In compliance with th[at] document," Wilson wrote, "the PSF of Sex Offender has been removed."  *Id.*  But, given Harrison's impending release date (just over two weeks away), Harrison would "not be transferred" to the minimum security camp.  *Id.*

On April 26, Harrison appealed Wilson's decision to the BOP's Mid-Atlantic Regional Director.  Dkt. 9-4 at 2.  Harrison was still awaiting the Director's response when he was released from prison on May 2.  *See id.*; Dkt. 7.  By coincidence, May 2 is also the day that Harrison's complaint was entered on this Court's docket.  *See generally* Dkt. 1.

---

[2]  Harrison also submitted a letter from the BOP, dated April 7, which describes itself as a response to Harrison's request under the *Freedom of Information Act* ("FOIA") for "documents related to a public safety factor."  Dkt. 11 at 59.  The letter stated that the BOP had "located no [responsive] records."  *Id.*  Harrison appealed that FOIA determination, *see id.* at 61, but he has not brought a FOIA claim in this case, *see generally* Dkt. 1.

6

### C.     The Current Litigation

Harrison brings this suit against the BOP, the United States, Wilson, Lewis, Vukelich, and King (the latter four of whom he sues in their official and individual capacities). *Id.* at 3–4 (Compl. ¶¶ 1–7). He asserts claims for damages under the Privacy Act, the U.S. Constitution, and state libel law. *Id.* at 10–12 (Compl. ¶¶ 34–39, A–F). He also seeks an order under the Administrative Procedure Act ("APA") "compel[ling] agency action unlawfully withheld" (*i.e.*, compelling the BOP to allow him access to his prisoner records), 5 U.S.C. § 706(1), and an order declaring Defendants' conduct unlawful and setting it aside, *id.* § 706(2)(A). *See* Dkt. 1 at 12 (Compl. ¶ G). Defendants have moved to dismiss the complaint, or, in the alternative, for summary judgment. Dkt. 9.

### II. ANALYSIS

### A.     Exhaustion

As a threshold matter, the Court declines to reach Defendants' argument regarding exhaustion under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Although Defendants argue that this issue is jurisdictional, *see* Dkt. 9 at 3–4, 7–10, that is incorrect. The D.C. Circuit has "[r]emov[ed] any doubt" that "the PLRA's exhaustion requirement simply 'governs the timing of the action' and does not contain the type of 'sweeping and direct' language that would indicate a jurisdictional bar." *Ali v. District of Columbia*, 278 F.3d 1, 5–6 (D.C. Cir. 2002) (quoting *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000)). Given that the issue is non-jurisdictional, the Court will exercise its discretion to decide the motion on other grounds.[3]

---

[3] Relatedly, the Court declines Defendants' invitation to revoke Harrison's *in forma pauperis* status. Defendants have not identified three "actions" brought by Harrison that were dismissed

7

B.     **Privacy Act Claims**

The Privacy Act of 1974, 5 U.S.C. § 552a, "regulates the 'collection, maintenance, use, and dissemination of information' about individuals by federal agencies." *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) (quoting *Doe v. Chao*, 540 U.S. 614, 618 (2004)). Harrison invokes three of its substantive components: subsections (d)(1), (e)(5), and (f). *See* Dkt. 1 at 10–11 (Compl. ¶¶ 36–38). Although these subsections ostensibly provide relief of the kind Harrison seeks, because the BOP has exempted the relevant system of files, Harrison has failed to state a Privacy Act claim.

Generally speaking, subsection (d)(1) requires each agency to provide individuals with access to records that pertain to them. Individuals denied access may sue for injunctive relief. *Id.* § 552a(g)(1)(B) & (g)(3). Under subsection (e)(5), moreover, if an agency uses records to make a determination about an individual, the agency must maintain those records "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." If inaccurate records result in a "determination . . . which is adverse to the individual," the individual may sue. *Id.* § 552a(g)(1)(C). And if the Court finds that the agency acted in an "intentional or willful" manner, damages are available. *Id.* § 552a(g)(4). Finally, subsection (f) requires that agencies promulgate regulations implementing the Act's requirements. Agencies that fail to comply with such regulations "in such a way as to

---

as "frivolous, malicious, or [as] fail[ing] to state a claim" within the meaning of 28 U.S.C. § 1915(g). Although Defendants claim that the Memorandum Opinion and Order in *Harrison v. BOP*, 7-cv-1543 (D.D.C. Sept. 28, 2007), qualifies as such a dismissal, *see* Dkt. 12 at 8, that assertion is incorrect. The Order in question dismissed some, but not all, of Harrison's claims. And "actions containing at least one claim falling within none of the three strike categories . . . do not count as strikes." *Thompson v. DEA*, 492 F.3d 428, 432 (D.C. Cir. 2007).

8

have an adverse effect on an individual" may also be subject to suit, and, if the conduct was "intentional or willful," may be liable for damages. *Id.* § 552a(g)(1)(D) & (g)(4).

According to Harrison, the BOP violated subsection (d)(1) when it failed to respond to his written requests to review "all files maintained in [BOP] systems containing information pertaining to the application" of his Sex Offender PSF, Dkt. 1 at 23, and his request for copies of certain forms in his record, including any "Inmate Load and Security Designation" forms (BP-337s) or "Custody Classification" forms (BP-338s),[4] *id.* at 25. *See id.* at 6–8 (Compl. ¶¶ 21, 25). As to subsection (e)(5), he alleges that the BOP failed accurately to maintain his records—not with respect to its copy of the misleading Presentence Report itself (which he acknowledges the BOP lacks authority to modify), but with respect to any BOP records that may have incorporated or relied upon that misleading information, in contravention of the district court's direction. *Id.* at 10–11 (Compl. ¶ 37). With respect to subsection (f), his theory appears to be that the BOP failed to comply with its own processes for permitting inmates to review their records. *See* Dkt. 1 at 11 (Compl. ¶ 38); Dkt. 11 at 87; *see also* BOP Program Statement 5800.17, *Inmate Central File, Privacy Folder, and Parole Mini-Files*, at 10–12 (Apr. 3, 2015) (providing for "Inmate Review of Inmate Central File materials").

The difficulty Harrison faces, however, is that "[a]ll information pertaining to a prisoner's security level and custody classification is maintained in the Inmate Central Records System," and that system of records is exempt from the provisions of the Privacy Act on which Harrison relies. *Vaden v. U.S. Dep't of Justice*, 79 F. Supp. 3d 207, 212 (D.D.C. 2015) (quotations and alterations omitted); *see* 5 U.S.C. § 552a(j)(2) (authorizing the exemption); *see*

---

[4] Harrison also requested any "409" forms, but the BOP identifies no form by that name on its official website. *See* https://www.bop.gov/PublicInfo/execute/forms?todo=query.

*also* 28 C.F.R. § 16.97(j) (the exemption itself). The BOP's Program Statement on *Inmate Security Designation and Custody Classification* explains that PSFs are normally applied at intake on the inmate's BP-337 form, and may then be amended through the use of Form BP-338. *See* Program Statement P5100.08, ch. 5 at 7. And the Program Statement on the Inmate Central Records System explicitly states that forms BP-337 and BP-338 reside on that system. *See* Program Statement 5800.17 at 15–17. In fact, that system appears to house *all* inmate records related to sentencing, PSFs, housing, custody classification, security designations, and the like. *See id.* The Court, accordingly, must join numerous other courts in holding, as a matter of law, that the Privacy Act subsections (d)(1), (e)(5), (f), and others afford inmates and former inmates no cause of action regarding such records. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (per curiam) (inmate sued the BOP under the Privacy Act for failing to maintain accurate records based on his Presentence Report, even after a district court ordered the BOP to strike the material; the D.C. Circuit affirmed dismissal of the case on the grounds that the records were exempt); *see also, e.g.*, *Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1096 (D.C. Cir. 2009); *Barnett v. United States*, 195 F. Supp. 3d 4, 8 (D.D.C. 2016); *Vaden*, 79 F. Supp. 3d at 212; *Brooks v. U.S. Dep't of Justice*, 959 F. Supp. 2d 1, 3–4 (D.D.C. 2013); *Jennings v. Fed. Bureau of Prisons*, 657 F. Supp. 2d 65, 72 (D.D.C. 2009).

      Harrison's response on this point is unavailing. He starts from the correct premise that the relevant regulation permits BOP to "waive" the exemption in certain situations. *See* Dkt. 11 at 20. The regulation states:

> Where compliance would not appear to interfere with or adversely affect the law enforcement process, and/or where it may be appropriate to permit individuals to contest the accuracy of the information collected, the applicable exemption may be waived, either partially or totally, by the BOP.

28 C.F.R. § 16.97(k).  And Harrison is also correct that the BOP has enacted a Program Statement that permits inmates to review and challenge records in the Inmate Central File System.  *See* BOP Program Statement 5800.17 at 10–12 (titled "Inmate Review of Inmate Central File Materials").  But it does not follow that Program Statement 5800.17 "waives" the BOP's Privacy Act exemption.  Indeed, the relevant portion of the Program Statement says just the opposite.  It states that it establishes an administrative procedure for record review *separate* from the Privacy Act and its statutory requirements.  *See id.* at 10.  That is, rather than waive the 552a(j) exemption, and thus re-trigger application of the Privacy Act, the Program Statement declares that the procedures it establishes for review of inmate central file materials "is not required by . . . the . . . Privacy Act."  *Id.*  The exemption therefore remains in effect, and Harrison has no basis to assert claims under the Privacy Act.

The Court will, accordingly, **GRANT** the motion to dismiss Harrison's Privacy Act claims for failure to state a claim.

**C.     APA Claims**

Apart from the Privacy Act, Harrison also seeks injunctive and declaratory relief under the APA.  *See* Dkt. 1 at 12 (Compl. ¶¶ G & H).  First, invoking 5 U.S.C. § 706(1), he asks the Court to "compel agency action unlawfully withheld"—that is, to compel the BOP to grant Harrison's prior requests for documents that pertain to the existence or nonexistence of a Public Safety Factor.  *Id.*  Second, invoking 5 U.S.C. § 706(2), he asks the Court to "hold unlawful and set aside" the BOP's "determinations" in this case, *id.*, by which he means the BOP's "fail[ure] to correct [his] file, reclassify [him], and transfer him to the [minimum security] camp," Dkt. 11 at 18.  He requests declaratory relief to the same effect.  *See id.* (Compl. ¶ H).

11

Before turning to the merits of these arguments, the Court notes that the APA provides a waiver of sovereign immunity, and cause of action, only with respect to "agency action," 5 U.S.C. § 702, and thus Harrison's APA claims fail at the threshold with respect to all defendants other than the BOP. The Court will, accordingly, limit its remaining analysis to whether Harrison is entitled to proceed against the BOP.

1. *Compelling Access to Harrison's Inmate Records*

The type of APA review that Harrison seeks is limited to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. This limitation "makes it clear that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). As such, a plaintiff "cannot bring an APA claim to obtain relief for an alleged Privacy Act violation." *Westcott v. McHugh*, 39 F. Supp. 3d 21, 33 (D.D.C. 2014); *see also Wilson v. McHugh*, 842 F. Supp. 2d 310, 320 (D.D.C. 2012) (same); *Tripp v. Dep't of Def.,* 193 F. Supp. 2d 229, 238 (D.D.C. 2002) (same); *Mittleman v. U.S. Treasury*, 773 F. Supp. 442, 449 (D.D.C. 1991) (same). Here, Harrison straightforwardly acknowledges that his "claims under the APA are primarily with respect to the defendants' failure to provide the requested documents sought in his March 3, 2016, request [under Privacy Act subsection (d)(1)]." Dkt. 11 at 18. Accordingly, the APA affords him no additional remedy.

2. *Setting Aside Unlawful Agency Action*

To the extent that Harrison also asks this Court to vacate (1) the BOP's designation of Harrison as a sex offender, (2) the BOP's determination that Harrison was not eligible for minimum security housing, or (3) the BOP's decision not to transfer Harrison to minimum

12

security housing after Harrison's record was amended (but when Harrison had only two weeks left on his sentence), the Court lacks jurisdiction to consider those claims.

The APA provides for judicial review of certain agency actions, and waives the sovereign immunity of the United States for such claims (and others). *See generally* 5 U.S.C. §§ 702, 706. But, what the APA gives, another provision—18 U.S.C. § 3625—takes away. In that provision, Congress has specified that the APA's provisions waiving sovereign immunity and creating a cause of action "do not apply to the making of any determination, decision, or order under" the statutes that govern the "imprisonment" of those convicted of a crime. *Id.* The referenced statutes governing "imprisonment" include, among other things, rules governing "the place of the prisoner's imprisonment," *id.* § 3621(b), and the consideration of "the history and characteristics of the prisoner" in making that assignment, *id.* § 3621(b)(3). As such, "BOP decisions involving custody classification and place of confinement are expressly exempt by statute from judicial review under the APA." *Miller v. Fed. Bureau of Prisons*, 703 F. Supp. 2d 8, 16 (D.D.C. 2010). An inmate's civil action to vacate the BOP's placement of a PSF on his record, and the housing and security determinations that follow from that placement, fall into this category. *See, e.g.*, *Burnam v. Marberry*, 07-cv-97, 2008 WL 4190785, at *7 (W.D. Pa. Sept. 10, 2008) (holding that 18 U.S.C. § 3625 precluded judicial review of BOP's decision to assign the plaintiff a PSF), *aff'd*, 313 F. App'x 455, 456 (3d Cir. 2009). The United States, accordingly, has not waived its sovereign immunity for these claims.

The Court will therefore **GRANT** the motion to dismiss Harrison's claims under the APA.

**D.  Constitutional Claims**

Harrison's claims for damages under the U.S. Constitution face a number of insurmountable hurdles, only some of which the Court recounts here.  To start, his alleged constitutional tort claims against the United States, the BOP, and its officers in their official capacities fail out of the gate on sovereign immunity grounds.  *See, e.g.*, *Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity . . . bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government." (emphasis removed)); *see also FDIC v. Meyer*, 510 U.S. 471, 477–78 (1994) (holding that the Federal Torts Claims Act does not waive sovereign immunity for constitutional torts).  These official-capacity claims must, accordingly, be dismissed.

Although the law provides—in limited circumstances—for damages claims against federal officials in their individual capacities, *see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Harrison has not stated such a claim here.  His complaint alleges that the BOP officials violated his due process and equal protection rights in the course of determining his "custody classification and housing assignment."  Dkt. 1 at 10 (Compl. ¶ 35).  But prison officials' decisions with respect to "prisoner classification and eligibility for rehabilitative programs" generally involve "no legitimate statutory or constitutional entitlement sufficient to invoke due process."  *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *see also Franklin v. Barry*, 909 F. Supp. 21, 29 (D.D.C. 1995) (finding no due process violation because "[t]he decision to transfer a prisoner to minimum security is committed to the sound discretion of the defendants based upon the facts of the individual inmate's case").  That rule surely holds here, where the officials' decision not to transfer Harrison to a minimum security housing facility less than two weeks before his release was, while not ideal for Harrison,

14

eminently reasonable. And, to the extent Harrison means to allege that the BOP officials violated his constitutional rights by inaccurately maintaining his records, that claim must also fail. The D.C. Circuit has clearly and repeatedly declined to create a *Bivens* remedy for claims "encompassed within the remedial scheme of the Privacy Act"—whether or not the Privacy Act actually affords such relief. *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 274 (D.C. Cir. 2003); *see also, e.g.*, *Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008) ("The failure of the Privacy Act to provide complete relief to the [plaintiffs] . . . does not undermine its status as a 'comprehensive scheme' that stops us from providing additional remedies under *Bivens*."); *Martinez*, 444 F.3d at 624 (concluding that "the district court properly dismissed the named individual defendants because no cause of action exists that would entitle appellant to relief from them under the Privacy Act").

Finally, Harrison alleges no facts to state a claim for First Amendment retaliation. *See* Dkt. 1 at 10 (Compl. ¶ 34). To prevail on such a claim, he must show "(1) he engaged in conduct protected under the First Amendment; (2) the defendant took some retaliatory action sufficient to deter a person of ordinary firmness in plaintiff's position from speaking again; and (3) a causal link between the exercise of a constitutional right and the adverse action taken against him." *Aref v. Lynch*, 833 F.3d 242, 258 (D.C. Cir. 2016) (quotation marks omitted). Harrison has not done so. Even if his requests to view or amend his inmate files were constitutionally protected, there is no plausible suggestion that the warden's decision not to transfer Harrison into minimum security housing was undertaken for retaliatory reasons. The decision not to upend his housing status for less than two weeks unquestionably had a "valid, rational connection between the prison [action] and the legitimate governmental interest put forward to justify it." *Id.* at 259 (quoting *Turner v. Safley*, 482 U.S. 78, 90 (1987)).

15

The Court, accordingly, will **GRANT** the motion to dismiss the constitutional claims against the United States, the BOP, and the official-capacity defendants for lack of jurisdiction, and will **GRANT** the motion to dismiss the constitutional claims against the individual-capacity defendants for failure to state a claim.

### E.     Common Law Libel Claim

Finally, the Court lacks jurisdiction to entertain Harrison's state law libel claims against the United States, the BOP, or its officers in their official capacities.  The United States has not waived its sovereign immunity with respect to "[a]ny claim arising out of . . . libel [or] slander," 28 U.S.C. § 2680(h); *see Sloan v. U.S. Dep't of Hous. & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001), so the Court lacks jurisdiction to consider these claims.

With respect to the individual-capacity defendants, the Westfall Act "accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties."  *Osborn v. Haley*, 549 U.S. 225, 229 (2007) (citing 28 U.S.C. § 2679(b)(1)).  Such suits can proceed, if at all, only against the United States.  *Id.* at 230 (citing 28 U.S.C. § 2679(d)).  Under the Act, the Attorney General—or his designee—is empowered "to certify that the employee 'was acting within the scope of his office or employment at the time of the incident out of which the claim arose,'" and, "[u]pon the Attorney General's certification, the employee is dismissed from the action."  *Osborn*, 549 U.S. at 229–30 (citation omitted).  Here, the Justice Department has yet to file a Westfall certification and, thus, the Court will **DENY** without prejudice Defendants' motion to dismiss the state-law tort claims against the individual-capacity defendants.[5]

---

[5]  Harrison's alleged failure to exhaust administrative remedies is no defense against the common law libel claim he asserts.  The PLRA's exhaustion requirement applies only to "action[s] . . . under [42 U.S.C. § 1983] or any other Federal law."  42 U.S.C. § 1997e(a).

## CONCLUSION

It is hereby **ORDERED** that Defendants' motion to dismiss and/or for summary judgment (Dkt. 9) is **DENIED** without prejudice with respect to the common law libel claims against the individual-capacity defendants, and **GRANTED** with respect to all other claims.

The Clerk shall mail a copy of this Memorandum Opinion and Order to Harrison at his address of record.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 31, 2017